UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **Theadore Kirkpatrick**; **Christopher Coll**, **Christopher O'Keefe**; and **Michael** and **Debbie Poprawa h/w**; individually and on behalf of all others similarly situated, | § § § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | Case No. 1:16-cv-00733-LY |
| **HomeAway.com, Inc.** and **Does 1–10**, | | |
| Defendants. | | |

# DEFENDANT HOMEAWAY.COM, INC.'S ORIGINAL ANSWER

Defendant HomeAway.com, Inc. files this answer to Third Amended Complaint filed by Plaintiffs Theadore Kirkpatrick, Christopher Coll, Christopher O'Keefe, and Michael and Debbie Poprawa (collectively, "Plaintiffs").

### RESPONSES TO ALLEGATIONS

Except as expressly admitted in this answer, HomeAway denies the allegations and characterizations in the Third Amended Complaint, including the prayer for relief, and responds as follows:

1.  HomeAway denies the allegations in paragraph 1.

2.  HomeAway admits that on November 4, 2014, during a quarterly earnings conference call with analysts from various financial institutions, Brian Sharples stated, "We are going to be free to travelers." HomeAway also admits that during the same conference call, Brian Sharples stated, "We will have a sizable marketing budget and we are going to be letting everybody know that you come to our platform and you don't pay a fee. And we think that's a big deal." HomeAway also admits that the following statements appeared on one or more of its websites at some point in the past:

    a.  "VRBO has no booking fees and is free for travelers."

    b. "No traveler fees. Free to book with no hidden costs."

    c. "No fees for travelers. No online booking fees or hidden costs."

HomeAway otherwise denies the allegations in paragraph 2.

  3. HomeAway denies the allegations in paragraph 3.

  4. HomeAway admits that it operates, through its various websites, an online marketplace for short-term vacation rentals, and that it has over 1.2 million paid vacation listings in 190 countries. HomeAway lacks knowledge or information sufficient to form a belief as to what Plaintiffs mean by "leading" and, therefore, can neither admit nor deny that allegation.

  5. The term "relevant time period" is not defined, and HomeAway therefore lacks knowledge or information sufficient to form a belief about its practices or other occurrences during that period. HomeAway admits that, during the period from May 19, 2015 (the date of the earliest subscription or renewal by one of the Plaintiffs), to February 9, 2016 (the date that HomeAway began charging traveler service fees), members could purchase annual subscriptions by paying an annual subscription fee. HomeAway admits that, during that time period, it websites permitted members to advertise vacation properties, communicate with travelers, and use various other tools. HomeAway lacks knowledge or information sufficient to form a belief as to why Plaintiffs or any other particular member purchased a subscription. HomeAway otherwise denies the allegations in paragraph 5.

  6. HomeAway admits that, as a vacation rental marketplace, it provided a forum for prospective travelers to rent vacation properties from owners. HomeAway admits that travelers could, among other things, search HomeAway's websites, locate a vacation property to rent, communicate with the owner of the vacation property, and rent the vacation property. HomeAway otherwise denies the allegations in paragraph 6.

  7. HomeAway admits that, at various times, one or more of the websites operated by HomeAway stated that HomeAway, at that time, did not charge booking fees and/or was free to travelers. HomeAway otherwise denies the allegations in paragraph 7.

  8. HomeAway denies the allegations in paragraph 8.

9. HomeAway denies the allegations in paragraph 9.

10. HomeAway denies the allegations in paragraph 10.

11. HomeAway admits that some members, including Ted Kirkpatrick, Christopher Coll, Christopher O'Keefe, and Debby Poprawa, paid HomeAway annual subscription fees in order to list properties on one or more of HomeAway's sites. HomeAway otherwise denies the allegations in paragraph 11.

12. HomeAway denies the allegations in paragraph 12.

13. HomeAway denies the allegations in paragraph 13.

14. HomeAway denies the allegations in paragraph 14.

15. HomeAway admits that on February 9, 2016, it began charging service fees to travelers who used one of HomeAway's websites to book a property via the site checkout. HomeAway otherwise denies the allegations in paragraph 15.

16. HomeAway admits that when it began charging traveler service fees in February 2016, the fees were generally within the range of 4%–9% of the total reservation amount. HomeAway otherwise denies the allegations in paragraph 16.

17. HomeAway denies that Plaintiffs are entitled to any compensation or other relief.

18. HomeAway lacks knowledge or information sufficient to form a belief as to Plaintiff Theadore Kirkpatrick's age or place of residence. HomeAway admits that Ted Kirkpatrick ("Kirkpatrick") purchased a subscription on HomeAway's VRBO website in May of 2011, and that he provided a billing address in Gwinn, Michigan. HomeAway admits that Kirkpatrick last renewed that classic-level subscription on May 19, 2015, and paid $349 for that renewal. HomeAway admits that it did not announce, prior to Kirkpatrick's May 19, 2015 renewal, that it would introduce such fees in February 2016. HomeAway lacks knowledge or information sufficient to form a belief as to why Kirkpatrick purchased and renewed his subscription, or what online advertisements Kirkpatrick had seen at the time he purchased or renewed his subscription. HomeAway admits that on two occasions it charged travelers a service fee for booking Kirkpatrick's rental property, and that the service fee was $93.71, which amounted to approximately 7.9% of the total reservation amount. HomeAway

admits that Kirkpatrick complained about the traveler service fee and claimed that it was causing him to lose business. HomeAway admits that it did not "drop" the traveler service fee after Kirkpatrick's complaint. HomeAway lacks knowledge or information sufficient to form a belief as to why Kirkpatrick chose not to renew his subscription after his May 19, 2015 renewal. HomeAway admits that Exhibit A to Plaintiffs' Third Amended Complaint is a true and correct copy of HomeAway Terms and Conditions effective as of December 17, 2014 (the "December 2014 Terms"), and HomeAway admits that Kirkpatrick became bound to the December 2014 Terms when he renewed his subscription on May 19, 2015. HomeAway lacks knowledge or information sufficient to form a belief as to whether the December 2014 Terms constitute the only contract that governs Kirkpatrick's relationship with HomeAway. HomeAway otherwise denies the allegations in paragraph 18.

19. HomeAway lacks knowledge or information sufficient to form a belief as to Plaintiff Christopher Coll's age or residence. HomeAway admits that Christopher Coll ("Coll") purchased a subscription on HomeAway's VRBO website on August 20, 2014, for a vacation property located in Avon, North Carolina. HomeAway admits that Coll provided a billing address in West Grove, Pennsylvania. HomeAway admits that Coll last renewed the subscription for his Avon, North Carolina property at the silver level on August 15, 2015, and paid $649 for that renewal. HomeAway admits that Coll purchased a silver-level subscription for a second property, located in Salvo, North Carolina, on January 11, 2016. HomeAway lacks knowledge or information sufficient to form a belief as to what representations or marketing Coll had observed on HomeAway's websites at the time he purchased or renewed his subscriptions. HomeAway admits that it did not announce, prior to Coll's August 15, 2015 renewal, that it would introduce traveler service fees in February 2016. However, HomeAway denies that it did not inform Coll about the traveler service fee before his January 11, 2016 subscription purchase, as HomeAway sent emails disclosing the upcoming introduction of the traveler service fee to all members, including Coll, on at least the following dates: November 5, 2015, December 9, 2015, and January 21, 2016. Further, HomeAway publicly disclosed its plan to introduce traveler service fees on November 4, 2015—three months before the traveler service fees went into effect on February 9, 2016. HomeAway admits that on five occasions it charged travelers a ser-

4

vice fee for booking Coll's properties after February 9, 2016, and that the service fee amounted to between 4.7% and 5.7% of the total reservation amount. HomeAway lacks knowledge or information sufficient to form a belief as to whether or why Coll sold the properties he listed on HomeAway's site. HomeAway admits that Exhibit B and Exhibit C to Plaintiffs' Third Amended Complaint are true and correct versions of the Terms and Conditions effective as of August 11, 2015 (the "August 2015 Terms"), and September 15, 2015 (the "September 2015 Terms"), respectively. HomeAway admits that Coll became bound to the August 2015 Terms when he renewed the subscription for his Avon, North Carolina property on August 15, 2015, and became bound to the September 2015 Terms when he purchased a subscription for his Salvo, North Carolina property on January 11, 2016. HomeAway lacks knowledge or information sufficient to form a belief as to whether the August 2015 Terms and September 2015 Terms constitute the only contracts that govern his relationship with HomeAway. HomeAway otherwise denies the allegations in paragraph 19.

20. HomeAway lacks knowledge or information sufficient to form a belief as to Plaintiff Christopher O'Keefe's age or residence. HomeAway admits that Christopher O'Keefe ("O'Keefe") renewed a bronze-level subscription with a global bundle, and purchased as three-month featured-listing package, for a property listed on HomeAway's VRBO website on January 11, 2016, paying $897. HomeAway lacks knowledge or information sufficient to form a belief as to what statements or advertisements O'Keefe had seen at the time he purchased and renewed his subscription, or whether and to what extent O'Keefe knew about HomeAway's publicly-announced plan to introduce service fees at the time he renewed his subscription on January 11, 2016. HomeAway denies that it did not inform O'Keefe about the traveler service fee before his January 11, 2016 subscription renewal, as HomeAway sent emails disclosing the upcoming introduction of the traveler service fee to all members, including O'Keefe, at least on the following dates: November 5, 2015, December 9, 2015, and January 21, 2016. Further, HomeAway publicly disclosed its plan to introduce traveler service fees on November 4, 2015—three months before the traveler service fees went into effect on February 9, 2016. HomeAway admits that, as of the date of this Answer, it has charged one traveler a service fee for a booking of O'Keefe's rental property on one occasion, and that the amount of

the service fee was $176, which amounted to approximately 4.4% of the total reservation amount. HomeAway admits that O'Keefe became bound to the September 2015 Terms when he renewed his subscription on January 11, 2016. HomeAway denies, however, that the September 2015 Terms constitute the only contract governing O'Keefe's relationship with HomeAway. Rather, on April 23, 2018, O'Keefe signed up for a pay-per-booking bundle for his property and, in doing so, agree to and became bound by HomeAway's Terms and Conditions effective as of November 14, 2017 (the "November 2017 Terms"), including the binding arbitration provision therein. HomeAway otherwise denies the allegations in paragraph 20.

21. HomeAway lacks knowledge or information sufficient to form a belief as to the ages and residences of Plaintiffs Michael and Debby Poprawa (collectively, "the Poprawas"). HomeAway admits that Debby Poprawa purchased a classic-level subscription on November 3, 2015, for $349 and provided a billing address in Eureka, California. HomeAway admits that Debby Poprawa purchased a six-month featured-listing package on November 9, 2015, for $149. HomeAway admits that it did not, prior to Debby Poprawa's November 3, 2015 renewal, announce that it would introduce traveler service fees in February 2016. HomeAway lacks knowledge or information sufficient to form a belief as to why Debby Poprawa purchased the subscription; what statements or advertisements Debby Poprawa had seen at the time the subscription was purchased; or whether and to what extent Debby Poprawa knew about the traveler service fees at the time the subscription was purchased on November 3, 2015. HomeAway denies that it has charged a service fee to any traveler who rented the property listed by Debby Poprawa. HomeAway admits that the Poprawas became bound to the September 2015 Terms when purchasing the subscription on November 3, 2015. HomeAway denies, however, that the September 2015 Terms constitute the only contract governing the Poprawas' relationship with HomeAway. Rather, it appears that Michael Poprawa booked a property through HomeAway's VRBO.com website and, in doing so, agreed to and bound the Poprawas to the then-current version of HomeAway's Terms and Conditions, including the binding arbitration provision therein. HomeAway otherwise denies the allegations in paragraph 21.

22. HomeAway admits the allegations in paragraph 22.

23. HomeAway lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 23.

24. To the extent HomeAway denies that it did the acts alleged by Plaintiffs, it therefore also denies that those acts were done by HomeAway's directors, officers, agents, partners, employees or representatives while actively engaged in the management and affairs of HomeAway's websites.

25. HomeAway admits that the amount in controversy exceeds the sum or value of $5,000,000. HomeAway admits that, for purposes of diversity jurisdiction, it is a citizen of Texas and Delaware. HomeAway lacks knowledge or information sufficient to form a belief as to Plaintiffs' citizenship and, therefore, lacks knowledge or information sufficient to form a belief as to whether subject matter jurisdiction exists under 28 U.S.C. § 1332(d). However, HomeAway admits that, based on Plaintiffs' alleged residence, Plaintiffs and HomeAway are citizens of different states.

26. HomeAway admits that, to the extent the Court has jurisdiction, venue is proper in this Court under 28 U.S.C. § 1391. HomeAway admits that it is authorized to conduct business in this District, resides in this District, is subject to personal jurisdiction in this District, and has consented to venue in this District. HomeAway otherwise denies the allegations in paragraph 26.

27. HomeAway admits that properties listed on its websites can be described in a number of ways, including as single family homes, condominiums, villas, and cabins. HomeAway admits that, as a general matter, members rent their properties on a short-term basis, nightly, weekly, or monthly. HomeAway otherwise denies the allegations in paragraph 27. HomeAway admits that

28. HomeAway admits that Expedia, Inc. agreed to acquire HomeAway, Inc. in November 2015, and that HomeAway, Inc. merged with Expedia, Inc. in December 2015.

29. HomeAway admits the allegations in paragraph 29.

30. HomeAway admits that some of its members pay an annual subscription fee in order to list properties on one or more of HomeAway's websites. HomeAway also admits that members may include various information about their vacation property in their listing, including a description of the property, the rental rate, availability, and photographs of the property. HomeAway otherwise denies the allegations in paragraph 30.

31.     HomeAway admits that until July 11, 2016, it offered five varying VRBO.com subscription levels: classic, bronze, silver, gold and platinum. HomeAway admits that classic was the least expensive subscription level, and that platinum was the most expensive subscription level. HomeAway admits that the price for a one-year subscription ranged in price from a few hundred dollars to over one-thousand dollars depending on the level purchased. HomeAway admits that, as of October 20, 2016, by default, all subscriptions paid for by credit card automatically renew just prior to the renewal date. HomeAway otherwise denies the allegations in paragraph 31.

32.     HomeAway denies the allegations in paragraph 32.

33.     HomeAway admits that when travelers search one of HomeAway's websites for a vacation rental property, they may select certain criteria such as location of the property, size of the property, travel dates, and availability, as well as the number of guests. HomeAway otherwise denies the allegations in paragraph 33.

34.     HomeAway denies the allegations in paragraph 34.

35.     HomeAway admits that just prior to February 9, 2016, HomeAway earned the majority of its revenue from the sale of subscriptions to members. HomeAway admits that, prior to February 9, 2016, HomeAway did not charge a traveler service fees to travelers who booked rentals through HomeAway's website. HomeAway otherwise denies the allegations in paragraph 35.

36.     HomeAway admits that, at various times, one or more of the websites operated by HomeAway stated that HomeAway was, at that time, free to travelers. HomeAway admits that, at the time HomeAway announced its traveler service fees on November 4, 2015, other online travel websites, including TripAdvisor and Airbnb, charged service fees to travelers who book properties through their websites. HomeAway otherwise denies the allegations in paragraph 36.

37.     HomeAway admits that the image pasted into paragraph 37 appeared on its VRBO website as of September 5, 2015. HomeAway otherwise denies the allegations in paragraph 37.

38.     HomeAway admits that the first image pasted into paragraph 38 appeared on its VRBO website as of October 29, 2015. HomeAway admits that the second image pasted into para-

graph 38 appeared on its website as of October 27, 2015. HomeAway otherwise denies the allegations in paragraph 38.

39. HomeAway admits that Brian Sharples made the statements described in paragraphs 40 and 41 of this Answer. HomeAway otherwise denies the allegations in paragraph 39.

40. HomeAway admits that on November 4, 2014, during a quarterly earnings conference call with analysts from various financial institutions, Brian Sharples stated as follows in response to a question:

> We are going to be free to travelers. TripAdvisor and Airbnb have chosen to charge big fees to travelers. Well, we're going to have a pretty sizable marketing budget in the next few years, and we're going to let everybody know that you come to our platform and you don't pay a fee. And we think that's a big deal because if you look historically at the travel industry, those competitors who adopted no traveler fees first are the ones that ended up being the big winners in that business.

HomeAway otherwise denies the allegations in paragraph 40

41. HomeAway admits that during the 2011 Capital Factory Demo Day, Brian Sharples stated as follows:

> Expedia tried this back in 1999. Yeah, they bought this company called Vacation Spot which was at that time the leading vacation rental marketplace business. And for some reason and they paid a ton of money for this company, like seventy five million bucks and a year later it went out of business. Really. Like, well, that's really strange so we hunted down a guy named Rich Barton. Rich Barton has gone on to be the founder of Zillow and some other companies as well. At the time rich was he was the ex-CEO of Expedia. So we hunted down Rich and said, "Gee, Rich, can we fly out and talk to you about what the hell happened when you tried to get in the vacation rental business?" And so we did. We went to Seattle, and he was kind enough to actually get two people from his management team—this is a deal that was done five years ago—and we all sat down in a cafe and had lunch and they told me the story about how they had taken this very successful business that was a simple marketplace business bringing buyers and sellers together in the vacation rental market and they immediately, when it came to Expedia, tried to turn it into a hotel business. This was a company charging subscription fees. They believed they could make more money charging a percentage of revenue just like hotels. So they said to all the customers, "Forget to subscribe' fees, you're now gonna pay us a percentage; we're gonna change the model; we're gonna put it on Expedia." Within a year the company was gone because none of the customers wanted to deal with that kind of a model.

9

HomeAway admits that Expedia agreed to acquire VacationSpot.com, Inc. in January 2000 and that the acquisition was completed on March 17, 2000. Given the passage of time, HomeAway lacks knowledge or information sufficient to form a belief as to whether Expedia implemented "a percentage based commission-model" on the Vacationspot.com website. HomeAway otherwise denies the allegations in paragraph 41.

42. HomeAway admits that, prior to February 9, 2016, HomeAway did not charge service fees to travelers for booking rentals through HomeAway's websites. HomeAway otherwise denies the allegations in paragraph 42.

43. HomeAway admits that § 1 of the December 2014 Terms, the August 2015 Terms, and the September 2015 Terms contains the following statement: "HomeAway.com and other Sites act as a venue to allow homeowners and property managers who advertise on the Site (each, a '**member**') to offer for rent in a variety of pricing formats, a specific vacation or short term rental property to potential renters (each, a '**traveler**' and, collectively with a member, the '**users**')." HomeAway otherwise denies the allegations in paragraph 43.

44. HomeAway also admits that the following statements appeared on one or more of its websites at some point in the past

    a. "VRBO has no booking fees and is free for travelers."

    b. "No traveler fees. Free to book with no hidden costs."

    c. "No fees for travelers. No online booking fees or hidden costs."

HomeAway otherwise denies the allegations in paragraph 44.

45. HomeAway admits that Kirkpatrick, Coll, O'Keefe, and the Poprawas listed properties on one or more of HomeAway's websites, but HomeAway lacks knowledge or information sufficient to form a belief as to whether they owned the properties they listed. HomeAway admits that each of Kirkpatrick, Coll, O'Keefe, and the Poprawas purchased and/or renewed a subscription before February 9, 2016, and that each had a live subscription on that date. HomeAway further admits that it began charging traveler service fees on February 9, 2016. HomeAway otherwise denies the allegations in paragraph 45.

46. HomeAway admits that each of Kirkpatrick, Coll, O'Keefe, and the Poprawas purchased and/or renewed a subscription before February 9, 2016. HomeAway otherwise denies the allegations in paragraph 46.

47. HomeAway admits that, by late 2014, one of its objectives was to encourage more of its members to use online booking. HomeAway admits that its online booking tool was put in place to enable travelers to book and securely pay for rentals directly through HomeAway's websites. HomeAway otherwise denies the allegations in paragraph 47.

48. HomeAway admits that, as of November 4, 2015, its best match system prioritized listings that have online booking. HomeAway otherwise denies the allegations in paragraph 48.

49. HomeAway admits that in 2015 it announced it would increase its $60 million marketing spend by 50%. HomeAway admits that, at various times, its advertisements stated that, at that time, HomeAway did not charge booking fees and/or was free to travelers. HomeAway otherwise denies the allegations in paragraph 49.

50. HomeAway admits that the advertisements pasted into paragraph 50 were active on May 22, 2015. HomeAway lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 50.

51. HomeAway denies the allegations in paragraph 51.

52. HomeAway admits that on November 4, 2015, Expedia and HomeAway, Inc. announced that Expedia agreed to acquire HomeAway, Inc. for $3.9 billion. HomeAway admits that on November 4, 2015, HomeAway, Inc. announced that it planned to introduce traveler service fees. HomeAway admits that when the traveler service fee was introduced on February 9, 2016, it applied to all booking transactions that ran through its online shopping cart. HomeAway otherwise denies the allegations in paragraph 52.

53. HomeAway denies the allegations in paragraph 53.

54. HomeAway denies the allegations in paragraph 54.

55. HomeAway admits that its VRBO website displayed the phrase "VRBO has no booking fees and is free for travelers" as of October 29, 2015 and that there may have been other

references to "no booking fees" elsewhere on the site which were accurate at the time stated. HomeAway otherwise denies the allegations in paragraph 55.

56. HomeAway admits that Kirkpatrick and the Poprawas purchased one-year subscriptions during the twelve-month period before February 9, 2016. HomeAway otherwise denies the allegations in paragraph 56.

57. HomeAway admits that its decision to introduce traveler service fees did not "materialize overnight." HomeAway admits that revenue projections reflecting the possibility of transitioning to a combined subscription and transaction-based revenue model, which potentially included introduction of a traveler service fee, were shared with Expedia during the negotiations leading up to Expedia's acquisition of HomeAway, Inc. HomeAway otherwise denies the allegations in paragraph 57.

58. HomeAway denies the allegations in paragraph 58.

59. HomeAway denies the allegations in paragraph 59.

60. HomeAway denies the allegations in paragraph 60.

61. HomeAway admits that § 21 of the December 2014 Terms, the August 2015 Terms, and the September 2015 Terms contained the following provision:

> This version of the Terms became effective on the date set forth above and this version amends the version effective prior to such date. We reserve the right, in our sole discretion, to amend these Terms, in whole or in part, at any time, with or without your consent and you acknowledge and agree that your consent to any such amendment is not required in the event the proposed amendment is clerical and/or non-substantive in nature. Notification of any amendment will be posted on the Site by the indication of the last amendment date at the top of these Terms and will be effective immediately. If you disagree with any non-clerical and/or substantive amendment to these Terms, then (i) your sole remedy as a traveler, or any other user other than a member, is to discontinue your use of the Site, and (ii) your sole remedy as a member is to withhold your consent to the applicability of the proposed amendment to your use of the Site, in which case your use of the Site will continue to be governed by the terms and conditions that were applicable to your use of the Site during the then current term of your subscription as the same were in effect immediately prior to the proposed amendment and you agree that you are responsible for keeping a copy of such terms. When members renew subscriptions, the terms

in effect at the time of renewal will govern, provided that such terms may change as described above.

HomeAway otherwise denies the allegations in paragraph 61.

62. HomeAway denies the allegations in paragraph 62.

63. HomeAway admits that some members contacted HomeAway to complain about the imposition of the traveler service fee. HomeAway further admits that HomeAway did not drop the service fee because, as this Court has already concluded, "the relevant Terms and Conditions do not prohibit a Traveler Fee [and, therefore] charging such a fee does not alter the Terms and Conditions of the Plaintiffs' agreements with HomeAway." HomeAway otherwise denies the allegations in paragraph 63.

64. HomeAway denies the allegations in paragraph 64.

65. HomeAway admits that on February 9, 2016, it began charging traveler service fees to travelers who booked a property on one of HomeAway's sites using the site checkout. HomeAway admits that when it began charging traveler service fees in February 2016, the fees ranged from 4% to 9% of the total reservation amount. HomeAway otherwise denies the allegations in paragraph 65.

66. HomeAway denies the allegations in paragraph 66.

67. HomeAway admits that paragraph 67 accurately (though selectively) quotes from statements appearing on the cited website. HomeAway lacks knowledge or information sufficient to form a belief as to whether the statements were actually posted by current or former HomeAway members. HomeAway otherwise denies the allegations in paragraph 67.

68. HomeAway admits that when members did not use online booking, they could accept payments outside HomeAway's websites through, *inter alia*, checks, bank transfers, PayPal, and credit card payments taken over the phone. HomeAway admits that, as of November 4, 2015, its best match system prioritized listings that have online booking HomeAway otherwise denies the allegations in paragraph 68.

69.     HomeAway admits that it added the following provision to the Terms and Conditions on July 1, 2016: "Members agree not to encourage or advise a traveler to avoid or circumvent the service fee charged by HomeAway." HomeAway otherwise denies the allegations in paragraph 69.

70.     HomeAway admits it regularly monitors activity and content on its websites for compliance with its Terms and Conditions, Content Guidelines, and Marketplace Standards, including provisions related to the traveler service fee. HomeAway admits that it has, on occasion, exercised its right to suspend or terminate a member's listing for violation of the Terms, Content Guidelines, and/or Marketplace Standards.[1]

71.     HomeAway admits that for members who use online booking, bookings are exclusively processed through the online reservation system and the traveler service fee is automatically assessed. HomeAway admits that, as of November 4, 2015, its best match system prioritizes listings that have online booking. HomeAway otherwise denies the allegations in paragraph 71.

72.     HomeAway denies the allegations in paragraph 72.

---

[1] Regarding the allegations in the first sentence of footnote 23, HomeAway admits that listing number 345127 was temporarily deactivated because the listing contained messaging indicating that the member was directing travelers to pay offline to avoid the traveler service fee, in violation of the Terms and Conditions. HomeAway admits that the listing stated that the member strongly disagreed with the fee and invited potential travelers to call the member via phone to discuss the issue further. HomeAway otherwise denies the allegations in the first sentence of footnote 23. Regarding the allegations in the second sentence of footnote 23, HomeAway admits that listing number 576134 was temporarily deactivated for failure to agree to and/or comply with HomeAway's Marketplace Standards. HomeAway lacks knowledge or information sufficient to form a belief as to the remainder of the allegations in the second sentence of footnote 23. Regarding the third sentence of footnote 23, HomeAway admits that listing number 716631 was temporarily deactivated on August 31, 2016, because the listing contained messaging directing travelers to pay offline to avoid the traveler service fee, in violation of the Terms and Conditions. Specifically, HomeAway admits that the listing stated, "GUESTS CAN AVOID [THE TRAVELER SERVICE] FEE BY WORKING OUT ALTERNATIVE PAYMENT ARRANGEMENTS (i.e., check) WITH OWNERS." HomeAway admits that the member informed HomeAway on October 3, 2016, that he had updated the listing to comply with the Terms and Conditions. HomeAway admits that it reactivated his listing on October 12, 2016, and added two free weeks to the member's subscription due to the delay in reactivating the listing. HomeAway otherwise denies the allegations in the third sentence of footnote 23.

73. HomeAway admits that the statements and tables quoted in paragraph 73 appeared in Expedia's public filings. HomeAway otherwise denies the allegations in paragraph 73.

74. HomeAway denies the allegations in paragraph 74.

75. HomeAway denies the allegations in paragraph 75.

76. Paragraph 76 does not include any allegations that require a response.

77. Paragraph 77 does not include any allegations that require a response.

78. HomeAway admits that Plaintiffs' claims are subject to Texas law. HomeAway lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 78.

79. Paragraph 79 does not include any allegations that require a response.

80. Paragraph 80 does not include any allegations that require a response.

81. HomeAway denies the allegations in paragraph 81.

82. HomeAway denies the allegations in paragraph 82.

83. HomeAway denies the allegations in paragraph 83.

84. HomeAway denies the allegations in paragraph 84.

85. HomeAway denies the allegations in paragraph 85.

86. HomeAway denies the allegations in paragraph 86.

87. HomeAway denies the allegations in paragraph 87.

88. HomeAway denies the allegations in paragraph 88.

89. HomeAway denies the allegations in paragraph 89.

90. HomeAway denies the allegations in paragraph 90.

91. HomeAway denies the allegations in paragraph 91.

92. HomeAway denies the allegations in paragraph 92.

93. HomeAway denies the allegations in paragraph 93.

94. HomeAway admits the allegations in paragraph 94.

95. HomeAway denies the allegations in paragraph 95.

96. HomeAway admits that it has engaged in trade or commerce, as those terms are defined in Texas Business and Commerce Code § 17.54(6). HomeAway otherwise denies the allegations in paragraph 96.

97. HomeAway denies the allegations in paragraph 97.

98. HomeAway denies the allegations in paragraph 98.

99. HomeAway denies the allegations in paragraph 99.

100. HomeAway denies the allegations in paragraph 100.

101. HomeAway denies the allegations in paragraph 101.

102. HomeAway denies the allegations in paragraph 102.

103. HomeAway denies the allegations in paragraph 103.

104. HomeAway denies the allegations in paragraph 104.

105. HomeAway denies the allegations in paragraph 105.

106. HomeAway denies the allegations in paragraph 106.

107. HomeAway denies the allegations in paragraph 107.

108. HomeAway denies the allegations in paragraph 108.

109. HomeAway denies the allegations in paragraph 109.

110. HomeAway denies the allegations in paragraph 110.

111. HomeAway denies the allegations in paragraph 111.

112. HomeAway denies the allegations in paragraph 112.

113. HomeAway denies the allegations in paragraph 113.

114. HomeAway denies the allegations in paragraph 114.

115. HomeAway denies the allegations in paragraph 115.

116. HomeAway denies the allegations in paragraph 116.

117. HomeAway denies the allegations in paragraph 117.

118. The allegations in paragraphs 118–126 do not require a response because the breach-of-contract claim has been dismissed with prejudice.

119.    HomeAway denies that Plaintiffs are entitled to the relief requested in the unnumbered paragraphs under the heading labeled, "Prayer."

**AFFIRMATIVE DEFENSES**

120.    Plaintiffs' claims are barred in whole or in part by the doctrines of waiver and/or ratification.

121.    Plaintiffs cannot prevail on their claim because they cannot prove their quantum of damages.

122.    Plaintiffs' claims are barred in whole or in part because HomeAway did not proximately cause Plaintiffs' alleged damages.

123.    Plaintiffs' claims for exemplary or punitive damages are limited by Chapter 41 of the Texas Civil Practice and Remedies Code. In addition, Plaintiffs' claims for exemplary or punitive damages are barred and/or limited in whole or in part by HomeAway's federal and state constitutional rights, including but not limited to mitigation, rights to due process, equal protection, protection from unreasonable fines and punishments, and rights to a fair trial and meaningful appellate review.

124.    HomeAway asserts all rights to proportionate responsibility under Chapter 33 of the Texas Civil Practice and Remedies Code.

125.    Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations and by the doctrines of estoppel, waiver, and/or laches.

126.    Plaintiffs' claims are barred in whole or in party by the doctrine of unclean hands.

127.    HomeAway is not liable to Plaintiffs to the extent that Plaintiffs did not mitigate damages, if any.

128.    HomeAway is not liable to Plaintiffs for unjust enrichment or restitutionary relief because HomeAway is entitled to counter-restitution and/or an offset.

129.    Plaintiffs may not maintain this suit to the extent that they agreed to binding arbitration. For example, O'Keefe, signed up to list a property with HomeAway on a pay-per-booking basis

on April 23, 2018. In doing so, O'Keefe accepted HomeAway's current Terms and Conditions, which require that any and all Claims (i.e., "any disputes or claims relating in any way to the Site, any dealings with our customer experience agents, any services or products provided, any representations made by us, or our Privacy Policy") be resolved by binding arbitration pursuant to the American Arbitration Association's rules, including "any Claims that arose before you accepted these Terms, regardless of whether prior versions of the Terms required arbitration." Similarly, the Poprawas would have agreed to the same arbitration provision when Michael Poprawa booked a property through HomeAway's VRBO.com website.

130.   HomeAway reserves the right to assert any additional affirmative defenses, including without limitation those that may be developed through discovery in this case.

## PRAYER

HomeAway respectfully requests that the Court deny class certification and, upon final hearing of this case, render judgment that Plaintiffs take nothing on their claims against HomeAway and grant HomeAway all costs of suit and all other relief to which it is justly entitled.

4827-4911-0886

Dated: July 20, 2018

        Respectfully submitted,

        SCOTT DOUGLASS & MCCONNICO LLP
        303 Colorado Street, Suite 2400
        Austin, Texas 78701
        (512) 495-6300 Telephone
        (512) 495-6399 Facsimile

        By: _/s/ David D. Shank_

        Stephen E. McConnico
        State Bar No. 13450300
        smcconnico@scottdoug.com

        Michael L. Merriman
        State Bar No. 24085975
        mmerriman@scottdoug.com

        David D. Shank
        State Bar No. 24075056
        dshank@scottdoug.com

        *Attorneys for Defendant HomeAway.com, Inc.*

## CERTIFICATE OF SERVICE

    I hereby certify that I have served a true and correct copy of this Original Answer upon each attorney of record and the original upon the Clerk of the Court on July 11, 2018.

        _/s/ David D. Shank_
        David D. Shank